**Robert HUSSON, Director of the Division of Labor as Administrator of the Major Medical Insurance Fund, Petitioner,**

**v.**

**Eugene M. BABBITT and the Industrial Commission of the State of Colorado, Respondents,**

**and**

**State Compensation Insurance Fund and E.B. Framing, Interested Parties.**

**No. 85CA1117.**

Colorado Court of Appeals, Div. III.

Oct. 16, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., Denver, for petitioner.

Sarney, Trattler & Waitkus, P.C., Saul R. Sarney, Denver, for respondent Babbitt.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., James R. Riley, Jr., Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

No appearance for State Compensation Ins. Fund.

No appearance for E.B. Framing.

VAN CISE, Judge.

In this workmen's compensation case, Robert Husson, Director of the Division of Labor (Director), as Administrator of the Major Medical Insurance Fund (Major Medical), seeks review of a final order of the Industrial Commission purporting to approve a vocational rehabilitation plan for Eugene M. Babbitt (claimant). We set the order aside and remand for further proceedings.

Claimant injured his back in November 1980. At that time, he was self-employed in the business of cabinetmaking and installation thereof under the business name "E.B. Framing," and was insured by the State Compensation Insurance Fund (Fund). Claimant has a sixth grade education and was 52 years old at the time of his injury. His prior work experience primarily consisted of employment and self-employment in jobs requiring physical exertion, although at one point he was the owner and manager of a house framing business, which did not require physical exertion on his part. Claimant had suffered prior injuries to his back in 1951 and 1970, and had undergone two spinal fusions, but was able to resume work without limitations until his November 1980 injury.

As a result of that injury, claimant underwent additional surgery and cannot return to his previous occupation as a cabinetmaker, installer, and kitchen remodeler. Because the Fund had paid medical benefits in excess of the statutory maximum, claimant was admitted to Major Medical in April 1983.

In June 1982, the Fund referred claimant to Crawford Rehabilitation Services for purposes of a vocational rehabilitation evaluation. Because claimant apparently was not interested in pursuing vocational rehabilitation, Crawford ceased rehabilitation efforts and closed its file in September 1982.

Thereafter, a March 1983 report from Helen M. Woodard, a rehabilitation specialist, was received, which indicated that claimant had been referred to Woodard for a rehabilitation evaluation. In that report, Woodard indicated that although she believed that the probability of claimant returning to any kind of gainful employment, even in a modified job, was quite small, she further believed that he should be provided rehabilitation services in an attempt to return him to some kind of gainful activity. She further stated:

"In a small business of his own, [claimant] would have to have enough capital to hire done the things which he is un-

able to do. While this is again not a very feasible goal, I think that it is the only possibility which would enable [claimant] to return to any kind of work in the labor force."

A subsequent hearing was held on, *inter alia,* the issue of vocational rehabilitation. At that hearing, claimant testified that he did not feel he could work for anyone else, that he was not interested in looking into any vocational rehabilitation with one of the programs, and that he felt that owning his own small business, "a small liquor store or something like that," would allow him to make a living. He indicated that he would have to hire someone to do the physical labor he was unable to do and that he would need at least $60,000 to capitalize a small business.

Woodard testified that she had set up about 25 people in business and that about 20 of those businesses were successful. She further opined that the chances of claimant being successful were "not real high." Nevertheless, she proposed a two-tiered plan whereby she would evaluate the likelihood of success in a small business situation and, if there was a likelihood of success, "then we are going to go ahead and do it."

The hearing officer, in an order announced in February 1984, found that claimant was permanently precluded from engaging in his usual and customary occupation and was unable to perform work for which he had previous training and experience. He further found that claimant was virtually unemployable in the open labor market and that the only likelihood of success for claimant would be to set him up in his own small business. The hearing officer concluded that the vocational rehabilitation plan proposed by Woodard could reasonably be expected to result in claimant attaining suitable gainful employment upon successful conclusion of the vocational rehabilitation program. Accordingly, the two-tiered plan proposed by Woodard was ordered to be implemented forthwith.

Upon review sought by the Director on behalf of Major Medical, the Industrial Commission affirmed the hearing officer's order. The Commission rejected the Director's argument that a vocational rehabilitation plan which attempts to help a claimant start his own business is contrary to the language and intent of § 8–49–101, C.R.S. (1986 Repl. Vol. 3B) governing vocational rehabilitation. It found:

"that there is no showing that the plan is a waste or potential failure from the start; it provides for two steps, in which the counselor will pay close attention to the prospects and ability for setting up the claimant in business, and his ability to become competitive in such an event; and *if it is not practicable, or appears to show the substantial prospect of failure, or impracticability, the counselor would duly inform the Director, whereupon there could be a modification or even termination thereof.* And further, the Commission is aware that the Division of Labor exercises a certain expertise in the approval of vocational rehabilitation vendors, and in assessment of their reports and analyses, and the Commission will not interfere with a proposed plan which does not appear to be inappropriate or plainly not allowable under the terms of the law. The present statutory language is also to be liberally construed in order to further its beneficent and remedial intent. The plan appears to have at least the reasonable prospect of a remedy in the present case." (emphasis added)

On review to this court, the Director on behalf of Major Medical contends that the Commission abused its discretion and misinterpreted the law when it required Major Medical to capitalize a new business for claimant as part of vocational rehabilitation efforts. Under the circumstances of this case, we need not reach the merits of this contention.

At the time that rehabilitation efforts were commenced by Woodard in 1983, procedural rules governing vocational rehabilitation were in effect. *See* 7 Code Colo. Reg. 1101–3 at 14–18 (1977). As is pertinent here, the rules required preparation of

a written description of the plan for submission to the Division of Labor. The rules further provided that the description shall include, *inter alia:* the suitable, gainful employment objectives of the vocational rehabilitation plan; the name and location of the educational institution, vocational training agency, or company or business involved in the plan; the nature, extent, and duration of services to be provided; the dates of commencement and expected completion of the plan; and the amount of weekly income maintenance benefits, tuition, fees, and transportation costs, if any, and the time and manner of such payment to the employee during rehabilitation.

In addition, these rules indicate that the plan was to include copies of all medical, psychological, and vocational evaluation reports related to the case. Also, upon submission of a proposed plan, and after review, the Division was authorized to order the plan approved, disapproved, or modified.

In November 1983, substantially revised rules of procedure concerning vocational rehabilitation came into effect. *See* Industrial Commission Rule V, 7 Code Colo.Reg. 1101–3 at 5–11 (1983). Under the new rules, a comprehensive vocational evaluation must be undertaken and prepared by a rehabilitation vendor in order to ascertain whether a claimant is a "qualified worker" as that term is defined in the rules. That evaluation is then to be submitted to the Director of the Division of Labor. If the claimant is found by the Director to be a qualified worker, *i.e.*, eligible for vocational rehabilitation benefits, a rehabilitation plan must be developed and submitted to the Director, who shall order the plan approved, disapproved, or modified. The proposed written plan shall include items substantially identical to those listed above.

It is of little critical import whether this case is governed by the old or new rules concerning vocational rehabilitation. Both sets of rules require that a vocational rehabilitation plan be fairly specific, and both require the plan to be approved by the Division of Labor. Moreover, it is not crit-

ical that the rules governing the content of a proposed plan appear on their face to be more applicable to a vocational rehabilitation program of retraining and placement with an existing employer, rather than as providing a claimant with his own business. In any event, under either set of rules, if there does not exist a rehabilitation plan of some specificity, the Division or Director cannot knowledgeably or meaningfully approve or disapprove a proposed plan.

Here, the Commission's order purports to order implementation of a vocational rehabilitation plan. However, the "plan" lacks real substance, essentially grants the rehabilitation vendor carte blanche to "check out" a small business situation and if it looks "good" then to "do it," and potentially exposes Major Medical to unlimited liability.

Pursuant to Industrial Commission Rule V.E., 7 Code Colo.Reg. 1101–3 at 10 (1983), a rehabilitation plan may be modified, suspended, or terminated if satisfactory progress is not being made, the plan is not likely to prepare the employee for suitable gainful employment due to unexpected contingencies, the employee refuses to complete or cooperate in the plan, a more suitable plan becomes available, or vocational rehabilitation is no longer necessary. However, we are not convinced that Major Medical's right to seek modification, suspension, or termination of the plan constitutes an adequate protection of Major Medical's rights here. If a "plan" is as amorphous as the proposal at issue here, there is virtually no standard by which to judge satisfactory progress or unexpected contingencies.

Also, approval of the plan here by the Director, through a hearing officer, and by the Commission constitutes a virtual abdication of their responsibilities under the rules. Evidence of this abdication is found in the Commission's statement: "if it is not practicable, or appears to show the substantial prospect of failure, or impracticability, the counselor would duly inform the Director, whereupon there could be a modification or even termination thereof."

Factors such as practicability and the prospect of failure or success are matters properly taken into consideration by the Director and the Commission in determining whether a proposed plan should be approved in the first instance.

Accordingly, under these circumstances, we hold that the Commission abused its discretion in approving the proposal by the vocational rehabilitation counselor concerning setting claimant up in a business of his own.

The order is set aside and the cause is remanded to the Industrial Claim Appeals Office for further proceedings consistent with this opinion.

BABCOCK and METZGER, JJ., concur.